KATTEN MUCHIN ROSENMAN LLP
Robert W. Gottlieb (RG-4147)
Steven Shiffman (SS-3630)
575 Madison Avenue
New York, New York 10022
(212) 940-8800

*Attorneys for Plaintiffs*



08 CIV 7236

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

ACORN CAPITAL GROUP, LLC,

                Plaintiff,

v.

THOMAS J. PETTERS,

                Defendant.

Case No.: 08 CV ____ ( )

**COMPLAINT**

---

Plaintiff Acorn Capital Group, LLC ("Acorn" or "Plaintiff"), by it attorneys Katten Muchin Rosenman LLP, as and for its complaint against defendant Thomas J. Petters ("Petters"), alleges the following:

### NATURE OF THE CASE

1. In this action, Plaintiff seeks to enforce its rights, and the rights of certain of its assignees for whom it acts as agent, against Petters (a) as the guarantor of a credit agreement (as amended from time to time, the last of which is dated as of May 12, 2008, the credit agreement and the amendments are referred to as the "PAC Credit Agreement") and (b) as the maker of certain false representations and warranties under the PAC Credit Agreement. Pursuant to the PAC Credit Agreement, Acorn agreed to finance the purchase of electronic equipment and other goods by PAC Funding LLC ("PAC" or the "Borrower"). Currently, the amount of outstanding

loans exceeds $273 million, exclusive of interest. Each of the loans is evidenced by a separate promissory note. PAC is wholly-owned, directly or indirectly, by Petters. Petters guaranteed the loans up to $50 million.

2. As described more fully below, PAC defaulted on its obligations under the PAC Credit Agreement, which triggered Petters' obligations as guarantor and gave Acorn the right to accelerate the loans.

3. Pursuant to the PAC Credit Agreement, PAC agreed to make a monthly payment of $10,000,000 on the first business day of each month, commencing on June 1, 2008. PAC failed to make the payment of $10,000,000 due on August 1, 2008, which constituted an event of default by PAC. The event of default resulting from the failure to make the $10,000,000 payment on August 1, 2008 gave Acorn grounds to demand that all outstanding amounts owed under the PAC Credit Agreement be paid forthwith.

4. On August 13, 2008, Acorn provided written notice of the default referred to in paragraphs 2 and 3 above and declared that all other outstanding obligations, which total approximately $273 million, under the PAC Credit Agreement were due and payable. As guarantor, Petters was obligated immediately to make the payments due and owing by PAC under the PAC Credit Agreement up to a total amount of $50 million. Petters has failed to make the required payments under the PAC Credit Agreement and is in default.

5. In addition to the default on the guaranty, Petters also breached a representation and warranty in the PAC Credit Agreement concerning the nature and quality of the collateral securing the loans made to PAC.

6. Accordingly, Acorn, on its behalf and on behalf of the parties it represents (as described below) is entitled to monetary damages of (a) $50 million against Petters as a result of his default on his obligations guaranteeing the loans and (b) in an amount to be determined at trial, as a result of Petters' breach of the representation and warranty provision in the PAC Credit Agreement.

## THE PARTIES

7. Plaintiff Acorn is a limited liability company formed under the laws of Delaware, with its principal place of business located at 2 Greenwich Office Park, Greenwich, Connecticut 06830. None of the members of Acorn is a citizen of Minnesota. Acorn is a financing company that entered into the PAC Credit Agreement with PAC and was the original lender in connection with the transactions on account of which each of the loans was made.

8. Acorn has assigned certain of the notes pursuant to which the loans were made to the following entities: ACG II, LLC ("ACG II"), Putnam Green, LLC ("Putnam Domestic"), Putnam Green, Ltd. ("Putnam Offshore"), Stewardship Credit Arbitrage Fund, LLC ("Stewardship Domestic"), Stewardship Credit Arbitrage Fund, Ltd. ("Stewardship Offshore") and Stewardship Credit Arbitrage Fund 1, Ltd. ("SCAF 1 Offshore," and, together with ACG II, Putnam Domestic, Putnam Offshore, Stewardship Domestic, and Stewardship Offshore, the "Other Noteholders"). Pursuant to agreements made as of May 12, 2008, each of the Other Noteholders, except ACG II, designated Acorn to act as its agent with respect to the loans, the PAC Credit Agreement and the Petters Guaranty. ACG II is a wholly-owned subsidiary of Acorn and Acorn has authority to act on its behalf.

9. Defendant Petters is an individual residing in Minnesota. Petters is a guarantor, in an amount not to exceed $50 million, of the loans made to PAC pursuant to the PAC Credit

Agreement and also made certain representations and warranties to Acorn under the PAC Credit Agreement.

## JURISDICTION AND VENUE

10. This Court has diversity jurisdiction over this action pursuant to 28 U.S.C. § 1332 in that there is complete diversity between Plaintiff, which does not have any members who are citizens of Minnesota, and Petters, a Minnesota citizen, on each of the claims asserted. The amount of each of the Plaintiff's claims against Petters exceeds $75,000.

11. In the Petters Guaranty (defined below), Petters consented to personal jurisdiction in New York and venue in New York County for all actions or proceedings arising out of or relating to the Petters Guaranty. Accordingly, venue is proper in this district under 28 U.S.C. § 1391(a)(3).

## FACTS

The PAC Credit Agreement

12. As of November 1, 2004, Acorn and PAC entered into the PAC Credit Agreement, pursuant to which Acorn agreed to make loans to PAC. The PAC Credit Agreement was amended from time to time, with the last amendment being made as of May 12, 2008. The original commitment amount was $200 million, and was increased over time to $300 million.

13. Pursuant to the PAC Credit Agreement, Acorn made loans to PAC, with in excess of $273 million currently outstanding. Each loan was evidenced by a separate promissory note issued at the time the loan was funded (the "PAC Notes"). Each promissory note provided, among other things, that it could be assigned by Acorn and that PAC would be obligated to reimburse Acorn "on demand for all reasonable attorney's fees and other expenses . . . incurred in

4

connection with the enforcement and collection" of the note and that, if not paid on demand, such fees and expenses would be added as principal to the note and bear interest pursuant to the terms of the note.

14. Pursuant to Section 2(d) of the PAC Credit Agreement, PAC was obligated to make a payment of at least $10 million on the first business day of each month, commencing on June 1, 2008.

15. Section 6.1(a) of the PAC Credit Agreement provides that an "Event of Default" shall occur under the PAC Credit Agreement, the notes issued pursuant to it, as well as the guaranty agreement made by Petters in connection with the PAC Credit Agreement, if PAC "shall fail to pay when due . . . the principal of, or interest on, the Loans or any other sum payable hereunder or under any Note."

16. Section 6.1(b) of the PAC Credit Agreement provides that an "Event of Default" shall occur under the PAC Credit Agreement, the notes issued pursuant to it, as well as the guaranty agreement made by Petters in connection with the PAC Credit Agreement, if "[a]ny representation, warranty, certification or statement made by [PAC], any officer thereof or [Petters], in any other Loan Document, Request of Loan or in any related document instrument or certificate . . . delivered to the Lender shall prove to have been incorrect or misleading in any material respect on or as of the date made or deemed made."

17. Pursuant to Section 6.2 of the PAC Credit Agreement, if an Event of Default occurs, "the Lender may, by written notice to [PAC] specifying such Event of Default . . . , terminate the Commitment and/or declare the outstanding principal of the Loans, all interest thereon and all other amounts payable under [the PAC Credit Agreement] and the [PAC Notes] to be forthwith due and payable whereupon outstanding Loans, all such interest and all such amounts shall

become and be forthwith due and payable, without presentment, demand protest or further notice of any kind, all of which are hereby expressly waived by [PAC]."

The Guaranty of the PAC Credit Agreement

18. In connection with the PAC Credit Agreement, Petters and Acorn entered into a Guaranty, dated as of November 1, 2004 (the "Petters Guaranty"), pursuant to which Petters guaranteed the payment of all loans by PAC under the PAC Credit Agreement up to $50 million.

19. Section 1 of the Petters Guaranty provides that Petters "hereby unconditionally guaranties the punctual payment in full (in immediately available funds) when due, whether at stated maturity, by acceleration or otherwise, of all obligations of [PAC] now or hereafter existing under the [PAC Credit Agreement] and all other Loan Documents to which [PAC] is a party, whether for principal, interest, . . . fees, expenses, or otherwise (such obligations being herein referred to as the "Guarantied Obligations"); provided, however, that in no event shall the liability of [Petters] under this Guaranty exceed an aggregate amount of $50 million."

20. Section 2 of the Petters Guaranty provided, in relevant part, that Petters "guaranties that the Guarantied Obligations shall be paid strictly in accordance with the terms of the [PAC Credit Agreement] and all other Loan Documents to which [PAC] is a party, regardless of any law, regulation or order now or hereafter in effect in any jurisdiction affecting any of such terms or the rights of acorn with respect thereto. This Guaranty is a guaranty of payment and not of collection only."

21. Section 10 of the Petters Guaranty provided that the "Guaranty shall inure to the benefit of and be enforceable by Acorn and its successors and assigns."

6

22. Section 11 of the Petters Guaranty provided that Petters would "pay on demand, and to hold [Acorn] harmless against liability for, any and all costs and expenses (including, without limitation, legal fees, costs and expenses of counsel and fees . . .) incurred or expended by [Acorn] in connection with the enforcement, amendment, modification or waiver of or preservation of any rights under this Guaranty, and the collection of amounts payable hereunder and obtaining advice of counsel in respect hereof, and until so paid, such fees, costs, disbursements and expenses shall be added to and constitute, Guarantied Obligations."

The Assignments of the Loans and Notes

23. Acorn sold many of the loans it made pursuant to the PAC Credit Agreement to the Other Noteholders, assigning the promissory note with respect to the loan being sold, as well as Acorn's rights with respect to payment of the note under the PAC Credit Agreement and the Petters Guaranty, to the purchaser.

24. Each of the Other Noteholders appointed Acorn to act as its agent with respect to the PAC Credit Agreement, the Petters Guaranty and the notes that were assigned and Acorn is authorized to bring this action.

25. As a result of the assignments referred to in paragraph 23, the following amounts, exclusive of interest, are currently due and owing by PAC under the PAC Credit Agreement and the PAC Notes to Acorn and each of the Other Noteholders: to Acorn, $14,736,170.29; to ACG II, $30,219,421.05; to Stewardship Domestic, $9,354,707.75; to Putnam Domestic, $51,217,890.88; to Stewardship Offshore, $51,012,607.67; to SCAF 1 Offshore, $14,166,944.71; to Putnam Offshore, $102,570,651.94.

The Defaults and Resulting Breach of the Petters Guaranty

26. Pursuant to Section 2(d) of the PAC Credit Agreement, PAC was obligated to make a payment of at least $10,000,000 on August 1, 2008, the first business day of that month. PAC failed to make the payment due on August 1, 2008 and that failure constitutes, without any action required on the part of Acorn or any other person, an Event of Default under Section 6.1(a) of the PAC Credit Agreement (the "PAC Default").

27. As a result of the PAC Default, as well as the breach of Section 6.1(b) of the PAC Credit Agreement (described below), pursuant to Section 6.2 of the PAC Credit Agreement, in a written notice sent on August 13, 2008, Acorn declared that all obligations under the PAC Credit Agreement, including, but not limited to, the obligation to pay the outstanding principal of all loans and all interest thereon, were due and payable.

28. Pursuant to the Petters Guaranty, Petters, as guarantor, is obligated to immediately pay all amounts owed by PAC under the PAC Credit Agreement, in an aggregate amount not to exceed $50 million, if PAC did not pay all amounts due strictly in accordance with the PAC Credit Agreement and the loans made pursuant to it.

29. To date, neither PAC, as borrower, nor Petters, as guarantor, has repaid the amount due and owing from either of them under the PAC Credit Agreement, which, at the time of this Complaint, exceeds $273 million.

The Breach of Section 5 of the PAC Credit Agreement

30. Pursuant to Section 5 of the PAC Credit Agreement, Petters, individually, "represent[ed] and warrant[ed] that all of the purchase orders owned by [PAC] as of the date [of the 5th Amendment to the Credit Agreement, May 12, 2008] and constituting Collateral, which

8

accounts receivable represent at least $289,000,000 (the "Face Value"), are, to the knowledge of . . . [Petters], valid and collectible in due course and in the ordinary course of business, subject to commercially reasonable dilution." (emphasis added.)

31. Contrary to the representation and warranty Petters made in Section 5 of the PAC Credit Agreement, PAC did not have Collateral of at least $289 million in accounts receivable at the time the representation and warranty was made.

32. During a telephone conference on August 4, 2008 with the Chief Executive Officer of Acorn, Petters admitted that the PAC collateral had a value of substantially less than $289,000,000. Petters further admitted that some of the collateral referred to Section 5 of the PAC Credit Agreement was inventory and not, as had been represented and warranted, accounts receivable. Petters' admission during the August 4th telephone call evidences that there was a breach of the representation and warranty that "all of the purchase orders owned by [PAC] . . . and constituting Collateral, which accounts receivable represent at least $289,000,000," are "valid and collectible in due course and in the ordinary course of business."

33. The breach of the representation and warranty in Section 5 of the PAC Credit Agreement constituted an Event of Default under Section 6.1(b) of the PAC Credit Agreement.

## AS AND FOR A FIRST CLAIM FOR RELIEF

### (Breach of Contract – Petters Guaranty)

34. Plaintiff repeats and realleges each and every allegation set forth in paragraphs 1 through 33 above as if fully set forth herein.

35. Plaintiff and the Other Noteholders have performed all conditions, covenants and promises required on their part to be performed in accordance with the terms and conditions of the Petters Guaranty.

36. Petters has breached the Petters Guaranty by, among other things, failing and refusing to pay Plaintiff and the Other Noteholders the amounts due under the PAC Credit Agreement and the PAC Notes, which PAC failed to pay when such amounts became due and were demanded by Plaintiff.

37. Based on the foregoing breaches by Petters of his contractual obligations, Plaintiff and the Other Noteholders have been damaged and are entitled to a judgment against Petters in the amount of $50 million.

## AS AND FOR A SECOND CLAIM FOR RELIEF

**(Breach of Contract – PAC Credit Agreement)**

38. Plaintiff repeats and realleges each and every allegation set forth in paragraphs 1 through 33 above as if fully set forth herein.

39. Plaintiff and the Other Noteholders have performed all conditions, covenants and promises required on their part to be performed in accordance with the terms and conditions of the PAC Credit Agreement.

40. Petters has breached Section 6.1(b) of the PAC Credit Agreement by making the representation and warranty "that all of the purchase orders owned by Borrower as of the date [of the 5th Amendment to the Credit Agreement] and constituting Collateral, which accounts receivable represent at least $289,000,000 (the "Face Value"), are, to the knowledge of . . . [Petters], valid and collectible in due course and in the ordinary course of business, subject to

commercially reasonable dilution," when, in fact, PAC had less than $289,000,000 in accounts receivable.

41. Based on the foregoing breach by Petters of his contractual obligations, Plaintiff and the Other Noteholders have been damaged and are entitled to a judgment against Petters in an amount to be determined at trial, plus attorneys fees and the costs of this action.

WHEREFORE, Plaintiff demands judgment in its favor and against Petters as follows:

(i)     on the First Claim, in the amount of $50 million;

(ii)    on the Second Claim, in an amount to be determined at trial, plus interest, attorneys fees and the costs of this action; and

(iii)   such other and further relief as this Court may deem just and proper.

Dated: New York, New York
       August 14, 2008

                        KATTEN MUCHIN ROSENMAN LLP

                        Robert W. Gottlieb (RG-4147)
                        Steven Shiffman (SS-3630)
                        575 Madison Avenue
                        New York, New York 10022
                        (212) 940-8800

                        *Attorneys for Plaintiffs*